UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROD TELFOR and ALICE TELFOR,

        Plaintiffs,

v.

DON WITTKOPP, STEVE RUSSELL, MONTCALM COUNTY SHERIFF DEPARTMENT, and UNKNOWN OFFICERS AND GOVERNMENTAL ENTITIES,

        Defendants.

_____/

Case No. 1:04-CV-711

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Defendants Don Wittkopp, Steve Russell, and the Montcalm County Sheriff's Department's Motion for Summary Judgment. Though titled as only for summary judgment, Defendants Motion was filed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56. The Court has reviewed the filings and finds oral argument unnecessary. W.D. MICH. LCIVR 7.2(d).

I.    **BACKGROUND**

On October 24, 2002, Defendants Don Wittkopp and Steve Russell, acting as Montcalm County Deputy Sheriffs, obtained and executed a search warrant against Plaintiffs' real property. Based on an informant's tip, Defendants believed that marijuana or other controlled substances were located there. The search warrant described the property to be searched as "353 W. Fenwick Rd. A white and brown colored two story building. This building is brick constructed and has a sign on the front that reads 'FENWICK GENERAL STORE.'" (Defs.' Br. in Supp. of Mot. for Summ. J., Ex. B). Plaintiffs were not present when the premises was searched.

The property located at 353 W. Fenwick Road is a commercial enterprise that, as the search warrant suggests, Plaintiffs operated as a general store. The general store is built out of white brick with a window front facade and partial canopy. Adjoined to this structure is a building that served as Plaintiffs' residence.[1] The residential structure is composed of brown brick and does not share the commercial structure's window front or canopy. These structures share a common wall and internal access to either structure is possible by a common door inside the structures. The residential structure also has a separate door for egress. Defendants searched both the commercial structure and the residential structure.

Plaintiffs submit that the commercial structure is addressed as 359 W. Fenwick Road and that the residential structure is addressed as 353 W. Fenwick Road. Plaintiffs did not affix a corresponding address to either structure. Plaintiffs contend that because the search warrant described the building to be searched as the structure adorned with a sign that read "FENWICK GENERAL STORE," Defendants exceeded the scope of the warrant by searching the residential structure.

## II.     STANDARD OF REVIEW

Deciding a motion for summary judgment requires the Court to determine if there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file. *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The facts are to be considered in a light most favorable to the non-moving party, and ". . . all justifiable inferences are to be drawn in his favor." *Schaffer v. A.O. Smith*

---

[1] However, Plaintiffs did not reside in the residential structure until July 2004.

*Harvestore Prod.*, 74 F.3d 722, 727 (6th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).

Once the movant satisfies his burden of demonstrating an absence of a genuine issue of material fact, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 153-54 (6th Cir. 1990). The non-moving party may not rest on its pleading but must present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56(e)). It is the function of the Court to decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The question is "whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Id.* at 252. "The 'mere possibility' of a factual dispute is not enough,'" *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)), neither is the submission of *de minimis* evidence. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

Whether dismissal is proper pursuant to Federal Rule of Civil Procedure 12(b)(6) is a question of law. *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004); *Arrow v. Fed. Reserve Bank*, 358 F.3d 392, 393 (6th Cir. 2004). The Court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, *Smith*, 378 F.3d at 568, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Roberson*, 399 F.3d at 794; *Arrow*, 358 F.3d at 393. When an allegation is capable of more than one

inference, it must be construed in the plaintiff's favor. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228-29 (6th Cir. 1997); *Columbia Natural Res. Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).

Although Rule 12(b)(6) clearly affords Plaintiffs some liberties, it does require more than the bare assertion of legal conclusions. *Bovee*, 272 F.3d at 361; *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (quoting *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993)). With regard to their Rule 12(b)(6) dismissal arguments, the Court observes that Defendants have not asked the Court to consider matters outside of the pleadings and the Court will therefore review Defendants' dismissal arguments under Rule 12(b)(6) rather than Rule 56. *See* FED. R. CIV. P. 12(b). It is with these principles in mind that the Court turns to the merits of Defendants' Motion.

**III.   DISCUSSION**

Plaintiffs' Complaint is brought pursuant to 42 U.S.C. § 1983, and charges Defendants with violating Plaintiffs' substantive due process rights, equal protection rights, and right to be free from illegal searches as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution. Defendants' Motion for Summary Judgment assails the sufficiency of these claims. Specifically, Defendants contend that: the Montcalm County Sheriff Department is not a legal entity capable of being sued; no county custom or policy motivated a constitutional violation; and Plaintiffs' claims against the individual deputy Defendants should be dismissed. The Court will address each contention in turn.

### A. The Montcalm County Sheriff Department

In *Bayer v. Macomb County Sheriff's Department*, 29 Mich. App. 171 (1970), the Michigan Court of Appeals summarily determined that as a county agency, a sheriff department could not be liable for the actions of a county sheriff or his deputies. *Id.* at 175 (citing MICH. CONST. 1963 art. VII, § 6, which provides that "[t]he county shall never be responsible for [a sheriff's] acts . . . ."). Although non-binding authority, *see Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995), *Bayer* has gained some currency in this district.

In *Hughson v. County of Antrim*, 707 F. Supp. 304 (W. D. Mich. 1988) [Hillman, J.], plaintiff named as defendants the Antrim County Sheriff Department and the Antrim County Prosecutor's Office. *Id.* at 305. The court explained that in Michigan, the sheriff's office does not exist as a separate legal entity, "[i]nstead, the sheriff and the prosecutor are individuals, elected in accordance with constitutional mandates. [MICH. CONST. 1963 art. VII, § 4]. Since the sheriff's department and the prosecutor's office do not exist, they obviously cannot be sued." *Id.* at 306; *see also Vine v. County of Ingham*, 884 F. Supp. 1153, 1158 (W.D. Mich. 1995) (holding the same under section 1983) [McKeague, J.]. Similarly, this Court finds *Bayer* and its progeny in this district persuasive. Therefore, the Court will grant Defendants' Motion on this ground and dismiss Defendant Montcalm County Sheriff's Department.

### B. Montcalm County

The Court observes that Montcalm County was neither captioned nor specifically named as a Defendant in Plaintiffs' pleadings. However, Plaintiffs do make reference to Montcalm County as a possible defendant in their Complaint, (*See* Pls.' Compl. ¶¶ 5 & 8), and Montcalm County is aware, as evidenced by the instant Motion, that it may be required to answer for the allegations in

Plaintiffs' Complaint. Thus, the Court finds that the dictates of due process and notice are met and will address Montcalm County's liability. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993).

Plaintiffs believe that Montcalm County's policies or customs led to the alleged constitutional deprivations. (Pls.' Compl. ¶ 8). However, Plaintiffs have submitted no evidence to suggest that any Montcalm County policy exists or how such a policy contributed to their constitutional deprivation.[2] *See, e.g., Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690 (1978) (municipal governments may only be sued for their own unconstitutional policies); *Marchese v. Lucas*, 758 F.2d 181, 189 (6th Cir. 1985) (relationship between a Michigan county and county sheriff department is so close as to make the county liable for sheriff's constitutional violations).

To the extent that Plaintiffs believe Defendants Wittkopp and Russell showed gross negligence, recklessness, or deliberate indifference, this theory of liability relates to Montcalm County's failure to train or supervise its law enforcement officials; however, again, Plaintiffs have submitted no evidence to support such a theory. *See, e.g., Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 397 (1997) (no municipal corrective action in face of multiple violations); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (inherent need for training in light

---

[2] Plaintiffs contend that they have requested a copy of "the Montcalm County's policy regarding the procedure for requesting, execution of and follow-through of search warrants [and that] Plaintiffs have not been provided with a copy of that information." (Pls.' Resp. to Mot. for Summ. Disposition [sic] at 2). However, Plaintiffs have not moved for a continuance to obtain more evidence under Federal Rule of Procedure 56(f). Rule 56(f) is a discretionary device that operates out of fairness to afford the non-movant in summary judgment the opportunity to discover evidence essential to his opposition. Plaintiffs have had ample opportunity to discover the allegedly damning policy and the Court finds summary dismissal of Montcalm County is appropriate at this time. *Leatherman*, 507 U.S. at 168-69 ("federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later."). Furthermore, the Court is skeptical that an explicit policy exists.

of obvious risk); *City of Oklahoma v. Tuttle*, 471 U.S. 808 (1985); *Moore v. City of Detroit*, 128 Mich. App. 491, 503 (1983) (failure to train or supervise exhibits deliberate indifference).

On either theory of municipal liability—a *Monell*-style policy or a theory of a failure to train or supervise—Plaintiffs' response to Defendants' Motion for Summary Judgment is bereft of any evidence that supports liability against Montcalm County.[3] Such a response is fatal under Rule 56(e) and summary judgment is appropriate. Therefore, the Court will dismiss Montcalm County from this action.

### C. The Individual Deputy Defendants

As indicated, Plaintiffs believe that Defendants Wittkopp and Russell exceeded the scope of their search warrant when they searched the residential structure and have brought substantive due process, equal protection, and unreasonable search claims under the Fourth and Fourteenth Amendments *via* section 1983. Defendants contend that Plaintiffs' substantive due process claims should be considered only under the Fourth Amendment, rather than the Fourteenth Amendment, under the more specific provision rule. Defendants also contend they are entitled to qualified immunity on Plaintiffs' Fourth Amendment claim and that Plaintiffs have failed to state an equal protection claim. Each assertion merits individual scrutiny.

#### 1. The More Specific Provision Rule

Plaintiffs' Complaint avers:

That Plaintiffs, Rod Telfor and Alice Telfor's constitutionally protected rights that the Defendant deputies violated include the following:

---

[3] Plaintiffs simply responded with vague references to duties and responsibilities and offer no concrete evidence for the Court to determine how Montcalm County contributed to the claimed constitutional deprivation.

      a.      Their right to liberty protected by in [sic] the substantive component of the [D]ue [P]rocess [C]lause of the Fourteenth Amendment, which includes a personal right to be free from improper searches of their property;

*  *  *

(Pls.' Compl. ¶ 13). Defendants correctly point out that the Supreme Court has

> [H]eld that where another provision of the Constitution "provides an explicit textual source of constitutional protection," a court must assess a plaintiff's claims under that explicit provision and "not the more generalized notion of 'substantive due process.'" *Graham v. Connor*, 490 U.S. 386, 395 (1989). Challenges to the reasonableness of a search by government agents clearly fall under the Fourth Amendment, and not the Fourteenth.

*Conn v. Gabbert*, 526 U.S. 286, 293 (1999). Plaintiffs' claim, the "right to be free from improper searches of their property," implicates only the Fourth Amendment. *Id.* Therefore, the Court will grant Defendants Motion on this ground and dismiss Plaintiffs' substantive due process claim.

    **2.**    **Qualified Immunity**

Qualified immunity shields government officials from monetary liability unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When determining if an officer is entitled to qualified immunity, the Sixth Circuit Court of Appeals endorses a three-part test. *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999). First, Plaintiffs have to allege a violation of a constitutionally or statutorily protected right; second, they must be shown that the right was clearly established at the time such that a reasonable official would have understood his behavior violated that right; and third, Plaintiffs have to allege sufficient facts, and support the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established rights. *Scicluna v. Wells*, 345 F.3d 441, 445 (6th Cir. 2003).

Plaintiffs certainly enjoyed a clearly established right to be free from unreasonable search and seizure when Defendants executed their warrant. U.S. CONST. amend IV; *California v. Hodari*, 499 U.S. 621, 624-25 (1991). The most crucial question concerning Defendants' asserted immunity is whether their conduct can be considered objectively unreasonable.

The Fourth Amendment limits law enforcement officials executing a search warrant to search only within the boundaries set by the warrant. *Marron v. United States*, 275 U.S. 192, 196 (1927). Defendants contend their search of the residential structure was reasonably within the scope of their warrant because there is some confusion as to the correct addresses of the structures. According to Defendants, Plaintiffs have regarded both structures as "353 Fenwick" and indicated the same to the Internal Revenue Service through tax filings. (*See* Rod Telfor Dep. at 19). Defendants posit that because Plaintiffs themselves considered the structures to constitute a single address, and no address or markings indicated otherwise, it was objectively reasonable for Defendants to assume the structures as the single location described in the warrant.

Although the Supreme Court has noted its apprehension that officers may enlarge the limited authorization furnished by a warrant into the equivalent of a general warrant to rummage, *Minn. v. Dickerson*, 508 U.S. 366, 378 (1993) (citations omitted), this Court cannot say that in this instance Defendants' conduct during the search was objectively unreasonable or exceeded the boundaries of their warrant. *See Marilyn v. Garrison*, 480 U.S. 79 (1987). As indicated, the warrant described a two-story white and brown brick building as the location to be searched. The Fenwick General Store is a two-story white building and the adjoining residential structure appears to be a one and one-half story brown brick building. (*See* Defs.' Br. in Supp. of Mot. for Summ. J., Ex. D). Given that neither building is labeled or otherwise delineated, it was entirely reasonable for Defendants to

assume that the structures constituted the single two-story white and brown brick building described in the warrant. Furthermore, Plaintiffs have not offered any evidence to rebut Defendants' assertion that 359 W. Fenwick Road is easily confused with 353 W. Fenwick Road, nor have Plaintiffs refuted that they have at least once before interchanged the addresses, heightening the confusion. Plaintiffs simply invite the Court to find Defendants' search went beyond the scope of their warrant because "there was no testimony given to obtain the search warrant regarding a side door, or a side building involved in any drug transactions." (Pls.' Resp. to Mot. for Summ. Disposition [sic] at 8). While this may or may not be true, it does little to dispute Defendants' common understanding that the structures (353 W. Fenwick and 359 W. Fenwick) were regarded as a single address and single structure. The Court finds that Defendants' search was objectively reasonable given that neither structure was marked and both structures were described in the warrant. Therefore, Defendants are entitled to qualified immunity and summary judgment on that point.

### 3. Failure to State an Equal Protection Claim

Defendants maintain that Plaintiffs have failed to allege an equal protection claim. On this score, Plaintiffs' Complaint reads as follows:

> That Plaintiffs, Rod Telfor and Alice Telfor's constitutionally protected rights that the Defendant deputies violated include the following:
>
> * * *
>
> The right to fair and equal treatment guaranteed and protected by the equal protection clause of the Fourteenth Amendment.

(Pls.' Compl. ¶ 13). When forced to elaborate on their claim by the dismissal portion of Defendants' Motion, Plaintiffs articulate their claim as "Defendant Wittkopp discriminated against Plaintiff and

labeled him as a career criminal for purposes of obtaining a search warrant . . . ."[4]  (Pls.' Resp. to Mot. for Summ. Disposition [sic] at 9).  Although Defendants will likely assert a host of rational reasons to defeat this claim, the Court cannot equivocally conclude that Plaintiffs can prove no set of facts in support of their equal protection claim.  *See, e.g., Oyler v. Boles*, 368 U.S. 448, 456 (1962) (and cases cited therein).  Thus, the Court will deny Defendants' motion seeking dismissal.

**IV.    CONCLUSION**

Therefore, the Court will grant in part and deny in part Defendants Don Wittkopp, Steve Russell, and Montcalm County Sheriff's Department's Motion to for Summary Judgment.  A Partial Judgment consistent with this Opinion shall issue.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>December 7, 2005 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |

---

[4] Plaintiff does not indicate whether Rod or Alice Telfor was so labeled.